Page number 23-3228 United States of America v. Donald J. Trump Appellant. Mr. Sauer for the appellant, Mr. Pierce for the appellate. Mr. Sauer, good morning. Before you get started, can I just get a couple of things on the record? Our jurisdiction was challenged by an amicus, but from your reply brief you are not questioning our collateral order jurisdiction. Correct. We defend the collateral order jurisdiction. That's correct, Your Honor. And then also you have either abandoned or not made the Fifth Amendment double jeopardy argument before us. We have framed the double jeopardy argument as arising principally from the impeachment judgment clause. So we haven't argued that if you go straight to the double jeopardy clause that that alone would result in reversal focusing on the impeachment judgment clause. Now that incorporates principles of double jeopardy, but we haven't said a straightforward directly under the double jeopardy clause in this court at this time. Well before that occurs then, I do want to speak to you a little bit more about jurisdiction because we still have to satisfy ourselves that we have the jurisdiction. So even though you believe that there's interlocutory jurisdiction with respect to the collateral order doctrine, how do you place that in line with what the statute specifically says in a criminal case? Your jurisdiction needs to stem from the Constitution or be explicit as well in statutory law. We have three responses to that if I may, Your Honor. One is of course that if you look at the language of Midland Asphalt, what Justice Scalia is discussing in that case is particularly a situation where the right is won, the legal and practical value of which would be destroyed if it were not violated before trial, and these claims of absolute immunity fall right in the heartland of that description of that right. That's been reinforced by this. But how do you deal with explicitly stating that because we don't have an explicit communication here with respect to anything in the Constitution or statute? Yeah, I respectfully disagree with that. The doctrine of presidential immunity arises directly from Article II, Section 1 in the Executive Vesting Clause. It's reinforced by the plain language of the impeachment judgment clause, which specifically refers to trial. Remember what Midland Asphalt is talking about is situations where the right not to be tried is at stake, and it distinguishes that from the right, the remedy for which is the dismissal of an indictment. So when you're talking about the right not to be tried, we have the clearest and most explicit reference to trial of any of the clauses in which the Supreme Court has found interlocutory jurisdiction. But there have been other circuits that have indicated on the issue of immunity Midland Asphalt still applies. Yeah, not presidential immunity with respect to that's what you're making your defense. Right, and well, what I would say is this court's decision in Cisneros explicitly says, you know, right there in it says most separation of powers claims may not be subject to interlocutory view, but there are some that may, and then it goes on to say presidential immunity arising from the separation of powers citing Clinton against Jones. So Cisneros, I think, expressly contemplates that there be interlocutory jurisdiction in this sort of claim, and that's further reinforced by the court's subsequent decisions in Rose and Rostatkowski situations where the court said, look, there's a speech and debate claim, and there's also another claim that it isn't derived directly from the Constitution, but it's closely akin or analogous to such a claim. Again, about explicit, because in the double jeopardy trial scenario, you have twice put in jeopardy. So you cannot be tried again in that regard. Then in the speech and debate, it says shall not be questioned. So the language was explicit. You're not giving me anything that says explicitly in the references that you cite. I have two responses to that. One is the plain language of the impeachment judgment clause, which says that only the party convicted shall be subject to indictment, trial, judgment, and punishment according to law. So that's going to take the negative inference, correct? Yeah, that's the only thing which supports it from the very beginning. That is the natural and ordinary meaning of the impeachment judgment clause. So that is an argument that that is explicit. And also to point out that this court in Rose, in Rosentowski, in Cisneros, expressly held this is not a magic words requirement. In other words, it isn't that you've got to say, it's got to say right there in the text of the Constitution or a statute that this is a right not to be tried. It's that the right once formulated has to explicitly include the right not to be tried. And that's why what actually the language that's previously admitted by Nassif all this heavily emphasized by Justice Scalia is a situation where there's interlocutory appeal when it's a right that legal and practical value of which is destroyed. It is not vindicated before trial. There's similar language in Cisneros. And for all these, I'd also point out the government also has not challenged the court's jurisdiction. It has conceded. We have to be sure in our own jurisdiction. Yeah, yeah, all of that. And hasn't the Supreme Court itself referred to the middle of the asphalt as a suggestion? Yeah, I'm not aware of that, but I think- And digital equipment. Gotcha. Yes, Your Honor. I believe Your Honor is correct about that. I think that's an excellent point. And that's reinforced by this court's case law in Cisneros, Rose, and Restantowski. Turning to the merits, if I may, Your Honor. To authorize the prosecution of a president for his official acts would open a Pandora's box from which this nation may never recover. Could George W. Bush be prosecuted for obstruction of an official proceeding for allegedly giving false information to Congress to induce the nation to go to war in Iraq under false pretenses? Could President Obama be potentially charged with murder for allegedly authorizing drone strikes targeting U.S. citizens located abroad? Could President- So, can I explore sort of the implications of what you're arguing? I understand your position to be that a president is amused from criminal prosecution for any official act that he takes as president, even if that action is taken for an unlawful or unconstitutional purpose. Is that correct? With an important exception, which is that if the president is impeached and convicted by the United States Senate in a, you know, proceeding that reflects, you know, widespread political consensus, that would authorize the prosecution under the plain language of the impeachment judgment clause. So, yes, with that exception. So, it seems to me that there are a lot of things that might not go through that process because it's quite a cumbersome process that requires the action of a whole branch of government that has a lot of different people involved. And so, in your view, could a president sell pardons or sell military secrets? Those are official acts, right? It's an official act to grant a pardon. It's an official act to communicate with the foreign government. And such a president would not be subject to criminal prosecution? The sale of pardons example is an excellent example because there were allegations about a sale of a pardon, essentially, when it came to President Clinton's pardon of Mark Rich. And the U.S. DOJ carefully, for the very reasons we've emphasized in our brief, decided not to prosecute President Clinton with that because it raised concerns about whether or not a president can be prosecuted for his official acts. But your position is that he can't be prosecuted for that? As long as it's an official act. I mean, in certain cases, purely private conduct under Clinton against Jones, he'd be subject to prosecution for that as long as he's not in office. Could a president order SEAL Team 6 to assassinate a political rival? That's an official act in order to SEAL Team 6? He would have to be, and would speedily be, you know, impeached and convicted before the criminal prosecution. But if he weren't, there would be no criminal prosecution, no criminal liability for that? Chief Justice's opinion were against Madison and our constitutional tradition and the plain language of the Impeachment Judgment Clause all clearly presuppose that what the founders were concerned about was not... Yes or no question. Could a president who ordered SEAL Team 6 to assassinate a political rival who was not If he were impeached and convicted first. So your answer is no? My answer is qualified yes. There is a political process that has to occur under our structure, our constitution, which require impeachment and conviction by the Senate in these exceptional cases. As the OLC memo itself points out from the Department of Justice, you'd expect a speedy impeachment and conviction. But what the founders are much more worried about than using criminal prosecution to discipline presidents was what James Madison calls in Federalist Number 47, you know, the newfangled and artificial treasons. They were much more concerned about the abuse of the criminal process for political purposes to disable the presidency from factions and political opponents. Of course, that's exactly what we see in this case. I've asked you a series of hypotheticals about criminal actions that could be taken by a president and could be considered official acts. And I've asked you, would such a president be subject to criminal prosecution if he's not impeached or convicted? And your answer, your yes or no answer is no. I believe I said qualified yes if he's impeached or convicted first. My question was, okay, so he's not impeached or convicted. Let's put that aside. You're saying a president could sell pardons, could sell military secrets, could order SEAL Team 6 to assassinate a political rival. Sale of military secrets strikes me as something that might not be held to be an official act. The sale of pardons is something that's come up historically and was not prosecuted. Your brief says that communicating with an executive branch agency is an official act, and communicating with a foreign government is an official act. That's what presidents do. In a very similar situation, this is very similar to potential official acts. If he's going to achieve justice, he'll set him against Edison. He said, directly under Article 2, Section 1, that the president's official acts are, quote, never examinable by the courts. He says it four different times on page 164 to 166. Let me ask you about that then, counsel, because your position is, as I understand it, if a president is impeached or convicted, impeached and convicted by Congress, that he is subject to criminal prosecution, correct? Be it necessary, he's set to champion prosecution. Is that a yes? Yes. Therefore, he's not completely and absolutely immune, because under the procedure that you concede, he can be prosecuted if there's an impeachment and conviction by the Senate. Very, very formidable structural check against the astonishing radical action of obscuring a former president's official acts. You're conceding that presidents can be criminally prosecuted under certain circumstances. Specifically, if they're impeached or convicted, I think that's the main part of the impeachment judgment clause. And isn't that also a concession, that a president can be criminally prosecuted for an official act, because presidents can be impeached for official acts? Under those unique circumstances. Correct. But given that you're conceding that presidents can be criminally prosecuted under certain circumstances, doesn't that narrow the issues before us to can a president be impeached? I'm sorry, can a president be prosecuted without first being impeached and convicted? All of your other arguments seem to fall away. Your separation of powers arguments fall away. Your policy arguments fall away. If you concede that a president can be criminally prosecuted under some circumstances. It's a great fact. The Constitution and the Article II sectional investing clause, as interpreted very Chief Justice Marshall in Norway against Madison says, Article III courts lack jurisdiction to engage in examination of the president's official acts. That's what you reaffirm. But you've stated that Article III can do so if he's been impeached and convicted. Constitution makes a carefully balanced explicit exception to that principle in the impeachment judgment clause. So the problem for the separation of powers, the Constitution does this in many other situations where it engages in a balancing. What the framers were most concerned about was not the notion that the president would never be prosecuted for things that outrageous political opponents. What they were concerned about was politically motivated prosecutions. But they didn't say the president can never be prosecuted. They set up the separation of powers and then created a very narrow exception that would allow prosecution in those cases. But once you concede that there's not this absolute immunity that the judiciary can hear prosecutions under any circumstances, you're saying there's one specific circumstance, then that means that there isn't this absolute immunity that you claim. I'm not aware of any case or constitutional doctrine that would say the Constitution sets up a very strong principle and it creates a very narrow exception. And therefore, the exception just makes the principle advantage. That's not what I'm asking you. I'm saying that you're coming before us and saying that there is this absolute immunity that is grounded in the separation of powers, that the judiciary can never sit in judgment on what the president is doing. But you're conceding that that's not true because under some circumstances, the judiciary can do that. That's all I'm saying. I think that repeating the answer, which is a very strong principle in the separation of powers, if it's Article III or it's sitting in judgment over a president's official There's a very narrow exception for conviction after impeachment. It just seems to me that once you concede that presidents can be prosecuted under some circumstances, your separation of powers argument falls away and the issues before us are narrowed to, are you correct in your interpretation of the impeachment judgment clause? Does the impeachment judgment clause actually say what you say it says? That's all that's really, we need to decide. I respectfully disagree with that. I respectfully disagree with that. There is a strong principle. It's reinforced by Chief Justice Marshall in Marbury against Madison. He didn't say we can never sit in judgment over a president's official acts, but because it could be impeached, convicted, therefore we can do it whenever we want to. He said the exact opposite. He says they are never examinable by the courts. So I'm answering the larger question about whether there's presidential immunity from to a standard on a motion to dismiss, which says, look to the allegation, take those as true, and then look to whether or not we should be looking at official acts in that lens. Especially both threshold questions, there's no such thing as criminal immunity for a former president and therefore the judicial court never reached the second issue, which is actually look at the face of the indictment. Are these all official acts? We have strong arguments on both of those things. The notion that criminal immunity for a president doesn't exist is a shocking holding. It would authorize, for example, the indictment of President Biden in the Western District of Texas after he leaves office for mismanaging the border, allegedly, and let a Texas jury and Texas judge sit in judgment over validity of attacks. But you also indicated earlier that when there were pardons or when people were not prosecuted, not everybody goes through an impeachment proceeding before they actually get prosecuted because that's within the discretion of the prosecutor. Only for subordinate officers. As the OLC points out very clearly, the founders, the framers, actually in the Constitution Convention, clearly contemplated that that sequence that I've described would be mandatory. He would have to be impeached and convicted first before you could go on. But impeachment also only deals with certain crimes, bribery, treason, high crimes and misdemeanors. Yeah, if you look actually at what is said in the Federalist Number 65 by Hamilton about that, high crimes and misdemeanors basically cover anything that the U.S. Senate makes a political judgment, justifies removing him from office and authorizing prosecution. But a prosecutor is impartial, does not make political judgments, assumingly, to charge. I think that that has no basis in the context of the current prosecution where the current incumbent of presidency is prosecuting his number one political opponent and his greatest electoral threat in this particular case. Asking you from the standpoint of what the impeachment judgment clause is designed to do, that it limits itself to certain acts. And then, therefore, and convicted, as you indicated, impeached and convicted their actor to be a prosecution. But not everybody goes through that process. And of course, it's limited to the certain actors in that regard, but not everybody has to go through that process. Prosecutors later on can come into information and evidence after they've investigated to make their determinations about what they'd like to criminally prosecute. So you're not always confined to whatever would be in the impeachment judgment clause. Whatever the practice has been with respect to subordinate officers, the evidence from the founding generation is clear as you cannot do that with respect to the president. And this is one example of many that's reinforcing the Supreme Court's case law, the uniqueness of the presidency and the person who occupies the office of the presidency. So, for example, you get repeated statements in Nixon against Fitzgerald that's reaffirmed in Trump against Mazars, reaffirmed in Trump against Vance and so forth about the unique nature of that particular office. Even under Clinton, where there's a deal cut, under President Nixon, where there's a pardon given, there's an assumption that you could be prosecuted, because why enter into those particular acts? Those examples are examples of purely private conduct. For example, Clinton gets, Jones makes very clear that the stuff that President Clinton cut an indictment deal about by admitting to certain wrongdoing in exchange for not being indicted was purely private conduct. Nobody has contended that the president's immune for prosecution for purely private conduct. It's the question is, can you be indicted for official acts? And you referred to the pardon of President Nixon. We have two things to say about that. President Nixon was accused of a wide range of purely private conduct. He was facing potential indictment for that if a pardon was issued. That's a purely private conduct. If we go to the indictment, they are not alleging purely, they're alleging that this is private conduct, subject to fraud, not official acts. So why don't you speak to that since you said that we have to look at the broader question as well as the indictment. Yes, Your Honor. So the allegations of the indictment, the official acts, the only way to even characterize them as private acts is to turn to the alleged motive or purpose for that. So their whole theory, their characterization of the language in the indictment is, oh, we're alleging purely private conduct because it was engaged in for particular purposes. And that's foreclosed by a very long and strong line of Supreme Court precedent. How does the Blasingame case fit here that we, this circuit, distinguish office seeker versus office holder in terms of how you're committing the act? This, Blasingame strongly reinforces what was said, it's been said in Supreme Court cases in Stump v. Sparkman going back to, for example, Marbury v. Madison where it's the nature of the act itself. I understand the Blasingame opinion to reinforce that by saying it's an objective. They use the word objective multiple times. Objective, context-specific assessment. It does not turn on the purpose or motive. That was strongly pushed in Blasingame and this court properly rejected. That's consistent with Nixon against Fitzgerald, Bradley against Fischer, Spalding against Velas, Judge Hand's opinion, Greg Waterman, that's the strongest, strongest individual law in his context. I'll turn to my colleagues because I've taken up your time, but we'll give you what you need. With respect to the actual indictment, it does not gloss over what, you know, and put it in terms of your describing. So if we look at the face of the indictment as to what's charged when it's gone through a grand jury process, unlike the impeachment judgment clause, how do we look at those particular acts as described? Because we have to take those at face value. There's clear guidance on this from Nixon against Fitzgerald. When Nixon against Fitzgerald, the allegation was President Nixon had unlawfully terminated a whistleblower, essentially. And that whistleblower came into court and says, this is not subject to immunity because it was unlawful. And the court said, we're not looking at that granular level of detail and we're not considering, most importantly, the alleged motive for these acts. It said that the level of specificity to consider it is conducting the business of the Air Force. Similar here, if you look at the indictment, there's five classes of conduct that are alleged, many of which are just obviously, obviously official conduct. A meeting with the U.S. Department of Justice about who should be the cabinet level officer running that. Is it the court land of the appointments power? You said many of which. All of which. I mean, Archivage is almost just one exception because there's allegations about the speech and under Blasingame, the contention was made that they should be remanded for that. But if you look at the other public statements, for example, President Trump's tweets, the Second Circuit held in my First Amendment Center that it was based on overwhelming evidence that's an official channel. His Twitter account during the presidency was an official channel of government communication. And under the objective test and Blasingame, all those tweets are obviously immune. So also with meetings with the Department of Justice, meeting with members of Congress, that falls right within the heartland of Article 2, Section 3, which authorized the president to communicate with Congress about the matters that he views as expedient. Let me ask you, first of all, I don't believe you were counsel then, but what about the two concessions made in the first impeachment proceeding and then in Trump v. Vance that impeachment should be standing and wait until he's out of office when he would be subject to criminal liability? As to Trump v. Vance, it was purely private conduct that involved a criminal subpoena for tax records that long predated President Trump's time in office. So it was purely private conduct, the concession that he could be subject to prosecution is also correct. As for the impeachment brief, for example, that they cited in their briefs, what that We have an investigative process in this country to which no former officer is immune. It did not say there could never be raised immunity defense. It said criminal process can go forward. There's a quote in the congressional record in which your counsel, I'm sorry, your client said through counsel, no former officeholder is immune from investigation and prosecution. Investigation is what there's no use to. Well, that may be true of supported officers, but as to the principal officer, the president, he is immune unless he is impeached and convicted. Again, it comes back to the point. He was president at the time and his position was that no former officeholder is immune. And in fact, the argument was there's no need to vote for impeachment because we have this backstop, which is criminal prosecution. And it seems that many senators relied on that voting to acquit. I realize the speculation statement. The court, I think, lacks the ability to intuit what motivated senators votes in the impeachment process. What the Constitution says is you must be impeached. I think the question that Judge Henderson was asking was you took the position or your client did during impeachment proceedings that there would be an option for criminal prosecution later. And it's in the congressional record. And I guess the question is, what has changed or why have you changed your position? I agree with that characterization of the statements in the congressional record. I believe there was a distinction between the judicial process and the investigative process. That was in the quote that I just read. In addition to that, whatever concession may or may not have been made, there would not have a ratio to cut effect in this proceeding. These are very different proceedings. And again, so again, the notion that no one is immune from the judicial process, the judicial process to go forward is fully consistent with the notion that defenses, including presidential immunity, which, again, rooted in the separation of powers, could be raised in those processes. So the notion that there could be a criminal process and then defenses like this could be raised in that process is, I think, pretty straightforward. There's no concession that there's no such thing as criminal immunity. There's no concession in those proceedings that what the district court in this case did that can very kind of astonish holding that no president is criminally immune from prosecution is just, I think, it's not there in the congressional record. Let me go back to Marbury v. Madison. And you isolated that one sentence. Isn't it true that the progeny of Marbury v. Madison has distinguished between discretionary official acts and ministerial, by which they mean imposed by law? And that is the latter one in which he can be held liable. And I want you to address both U.S. v. Johnson and the Commonwealth of Virginia, because the first one deals with the speech and debate clause. And the Supreme Court said, in essence, lop off all of the evidence dealing with the speech and debate, he can still be prosecuted, that is, that congressman, for, I think it was conspiracy to defraud the U.S. or something. And then in the Commonwealth of Virginia, you had the judge who had been charged with a crime under which you could not discriminate in picking jurors based on race. And my reading of that case is that the language that you isolate in your reply brief, that it could just as easily be done, that is the choosing of the jury, a ministerial act by someone on the street. To me, that means when you have a duty that is imposed by law, picking a jury, they said was ministerial, imposed by law. Whether you're the man on the street, whether you're the president, whether in that case you're the judge, you can be held criminally liable. And that's how I, that's how I read, if not Marbury, the progeny, that is, you can't stop an official act. You have to say, was it a discretionary official act or was it a ministerial? I agree with that characterization, Marbury. I think that distinction is present in Marbury itself. And I think what I would respond to that is to say, first of all, that extension has never been extended up to the president. And for good reason, because for over 200 years, the courts have told me, we can't sit in judgment over the president's official acts under any circumstances. So for example, Mississippi against Johnson. No, not true. We don't have any proof. That's correct. It's never arisen until this case. That is actually correct. But if you look at every civil context, what they've said, keep in mind that what Chief Justice Marshall says is never examinable. Never examinable. So there'll be no judicial proceeding where you can say the president did this, and we're going to sit in judgment directly over that. That's reinforced by Mississippi against Johnson, by Swan against Clinton from this court more recently, where the courts hold that we can't even enjoin or even really enter a declaratory judgment directly against the president for his official acts. Whereas the distinction between ministerial and discretionary has been held totally with respect to subordinate officers. And that goes all the way back to Marbury. However, if you look at the indictment in this case, nothing that's alleged against President Trump could remotely be described as ministerial. I don't know where the government has ever argued that if you're talking about, you know, responding to widespread allegations of fraud, abuse, and misfeasance in a presidential election, trying to find out how to respond to that in a manner that's in the national interest. Matters of that nature are not ministerial at all. So even if that distinction goes all the way up to the president, so to speak, it wouldn't save the indictment here. Why isn't it ministerial? His constitutional duty to take care that the laws be faithfully executed requires him to follow those laws. Every one of them. Yeah, I mean, I would say the take care clause, carrying out one's duties in the take care clause are inherently discretionary. An example of a ministerial act, for example, in Marbury against Madison is like delivering a seal when you're requested. Because there's a separate statute, right? What they emphasize is there's a separate statute. The secretary of state had kind of these two hats on. He was, on one hand, a direct agent of the president. And that could never be examined by the courts. On the other hand, the original statute imposed all these purely ministerial duties that had to do with record keeping and delivering documents. Like, you've got a land deed that's got a seal on it and a person asked for it, where there's no discretion at all. When you're talking about the take care clause, there's no statute that could impose on the mandatory duty to engage. I mean, the notion that when the president's meeting with the Department of Justice, for example, saying, hey, we should investigate and enforce federal fraud statutes, the notion that that's ministerial strikes me as insupportable. Well, I think you're missing what I'm asking, which is, I think it's paradoxical to say that his constitutional duty to take care that the laws be faithfully executed allows him to violate criminal laws. Now, we're at the motion to dismiss stage. The government has charged the specific criminal laws. We have to assume they're true. I mean, my response to that, I think, would be to emphasize what Chief Justice Marshall said in Marbury, which is that they can never be exemplified courts. That naturally includes a criminal proceeding. But I thought you agreed with me that we've gotten beyond Marbury in the sense that official act has been subdivided into discretionary and duty bound or ministerial. And in the ministerial or duty bound, at least with respect to even legislators and judges, they have been held to criminally law. And that's in the face, at least with respect to the legislators, of an explicit constitutional privilege. Yeah, I don't view United States against Johnson or even Ex parte Virginia as resting on the ministerial versus discretionary distinction. I think what Johnson says is, it doesn't say, hey, when you were doing these other things, they were ministerial, but it says that these were not legislative acts. Right? And so it draws the distinction between legislative and non-legislative acts. So also, I think that's the right reading of Ex parte Virginia. It goes, they go on to say judicial act. And there's an argument that picking a jury, I don't even believe they use the words, my recollection, ministerial. They say that- Because they were criminal acts. They were criminal acts. Picking the jury based on race is a criminal act. And whatever Johnson did, I think it was the very same statute of fraud against the United States that is before us today. I would say that the distinction in those cases is between, in the judicial case, Johnson, judicial, sorry, legislative, sorry, the non-legislative case, Johnson, is between legislative acts and non-legislative acts. The distinction in Ex parte Virginia is between judicial acts and non-judicial acts. That phrase is used in here. The distinction is between presidential acts and non-presidential acts. And everything that's alleged in the indictment is a presidential act. Your Honor, I see- May I? There are a number of precedents or cases in which the Supreme Court has reviewed actions by the president. The seminal case of Youngstown Sheet and Tube, where the Supreme Court reviewed Harry Truman's seizure of the steel mills during the Korean War. There's also the case of Little v. Boreem, where Chief Justice Marshall reviewed the actions of President Adams when he seized certain vessels. Trump v. Hawaii was reviewing President Trump's order restricting the entry into the United States of nationalists from certain foreign countries. How does that square with your position that the judiciary can never review executive actions? All those cases fall squarely within the well-established exception in Ex parte Young, where the judiciary is allowed and does frequently issue declaratory judgments, injunctions, judgments against subordinate officers. These are precedents. These are precedents. Harry Truman wasn't the president when he seized the steel mill. How does that comport with your theory? In that case, there's an injunction against the Secretary of Commerce, not against the president. This court has reaffirmed very recently that you cannot issue an injunction directly against the president. The court has no jurisdiction to do that. Cannot enter strongly indicates in Newt Allegance Roberts that the court can review presidential action if, on paper, they direct their judgment to a subordinate officer. Is that what you're saying? These are presidential actions. The court can definitely enjoin the actions of subordinate officers that violate the Constitution as Ex parte Young. I'm asking you a different question because these are presidential decisions, presidential actions, and you're saying that the court can review presidential actions as long as when they issue the judgment, they issue it to a subordinate officer. In direct context, it can't directly sit in judgment unless it's official. It's been established for over 200 years. You're using the impeachment judgment clause essentially as a negative implication with respect to that the civilian officer or president, of course, has to be impeached and convicted and then, nevertheless, thereafter. If there isn't acquittal, how are you using it in that regard? Because sometimes, and particularly in this case, the acquittal can arise from lack of jurisdiction, not actually trying the merits of the case. The impeachment judgment clause doesn't distinguish between those sort of merits-related acquittals and non-merits-related acquittals. Frankly, the same sort of thing comes up in just criminal prosecutions under the double jeopardy clause where a determination that the defendant is acquitted does not necessarily reflect an actual determination that they're not actually guilty. In fact, this is emphasized in the OLC memo that they themselves addressed that actually that determination often reflects things that are distinct from the merits. That doesn't, I think, in any way undermine the double jeopardy force, so to speak, of the impeachment judgment clause. One of the briefs indicated that Jack Smith is improperly appointed. Do you have a position there? It's a very persuasive brief, but I can see we have not raised in this case. It raises very powerful questions, but we haven't raised in this case at this time. Let me ask you just about the effect of blasting game. If we say we can't determine if these acts are official or private, I want to stay away from that. I'm going to say ministerial or discretionary. Blasting game characterized it in terms of office seizure versus office holder. What is your position about would we have to remand it for the district judge to decide in the first instance whether the four points that the defense has made against imposing criminal liability hinge on whether the acts are ministerial, discretionary, official, private, or however you want to characterize it? I'm going to use the phrase from Clinton against Jones, which says purely private conduct is what can be subject to judicial process after a president leaves office. In response to your question, our principal position is you can look at this indictment and it alleges official acts, and it can be ordered to be dismissed. We acknowledge, though, that the district court didn't reach that issue, but blasting game did remand. The court absolutely has the discretion to remand to the district court for the application of the doctrine of criminal immunity in the first instance, and we admit that that would be a natural thing for the court to do. To the specific act. Correct, yeah. In other words, if the court holds that there is presidential immunity, which it should, then remand to the district court to say, okay, go through the indictment or else hold factual findings and so forth to decide how it applies to the conduct alleged in this case, we acknowledge that would be, the court has the discretion to do that, and that would be a natural course. And if there are no further questions. I have one more question. Under the framework established or discussed in Nixon versus Fitzgerald, we're supposed to conduct a balancing test where we balance the need for the asserted immunity versus other public interests. And I see you as trying to represent a need for the executive to have this immunity to facilitate executive functions. The ability to act without hesitation, to be fearless, to make decision making with to make decisions without being inhibited by the fear of prosecution. But it seems to me that there are some other article two interests here that are countervailing. For example, under the article two, there's an executive vesting clause. And so there is an interest of the executive branch as an institution to have constitutional executive power vest in a newly elected president. There's also an executive interest as an institution in law enforcement, in enforcing criminal laws. And so it seems to me if we're weighing executive interests versus public interests, public interests and things like the integrity of an election, that President Trump's position is not fully aligned with the institutional interests of the executive branch. And in this balancing test, that weakens the executive power that he's trying to assert. I say three things in response to that. First of all, Nixon against Fitzgerald emphasizes that the most compelling consideration when one considers what it describes as policy considerations rooted in the separation of powers is the rendering of the executive branch official unduly cautious, unduly cautious in the exercise of highly controversial and sensitive decisions that come up all the time. If a president has to look over his shoulder or her shoulder every time he or she has to make a controversial decision and worry after I leave office, am I going to jail for this? When my political opponents take power, that inevitably dampens the ability of the president. Now, I understand that that's your position, but I guess I'm asking you, what about other article two interests? That's one interest. But there are other article two interests in play here too. And they seem to be countervailing the interest in executive vesting. The interest in law enforcement. Those are also executive branch interests. And how should that affect the analysis? Those, to the extent the court conducts a balancing our principal positions, you can go back to Marbury versus Madison and adopt a categorical rule, which is also referenced in Nixon against Fitzgerald. But to the extent the court reaches the balancing of policy considerations, those decisively outweighed by the sort of republic shattering consequences of subjecting our chief executives in an endless cycle to prosecution once they leave office. The founders were very much against that. They were deeply concerned with that. You see that in Hamilton's writings in Federalist 65, 69, and 77. You see it reflected in Madison's concern about newfangled and artificial treasons in Federalist 47. And that is the original meaning of the Constitution. Do you think we should, it just occurred to me, do you think we should take any cognizance of the fact that when they wrote that, George Washington was the president? I mean, a very, very strong executive. The Congress was brand new. Everything else was brand new. And things have balanced out. I mean, we've got a strong Congress. We've got a strong judiciary. And we've got a strong president. I think that if you look at the writings of the founders, they were definitely looking past the presidency of George Washington, obviously an iconic figure, looking past the presidency of George Washington, future presidencies. And they correctly anticipated that the nation might, what they're deeply concerned about was that the nation would devolve into factions. Factionalism did not govern the presidency of George Washington because of his moral authority. However, immediately when you got to Adams and Jefferson, you immediately devolved into factions. They correctly anticipated and were deliberately looking past that presidency to the future of the Republic. A tradition that stood for 234 years until last year when it was shattered by the indictment of President Trump. And for, if the court has no further questions, we would ask the court to reverse. And if the court rules against us in any respect, we renew our request that the court stay its mandate to allow us to seek further review, both NVAC and Supreme Court review. Can you give me five minutes to rebut? Thank you, Your Honor. Okay. Good morning. And may it please the court. Never in our nation's history until this case as a president claimed that immunity from criminal prosecution extends beyond his time in office. The president has a unique constitutional role, but he is not above the law. Separation of powers principles, constitutional text, history, precedent, and other immunity doctrines all points to the conclusion that a former president enjoys no immunity from criminal prosecution. At a minimum, this case in which the defendant is alleged to have conspired to overturn the results of a presidential election is not the place to recognize some novel form of criminal immunity. Now, I want to start with jurisdiction as Judge Childs raised. It is our view that the court has and should entertain both claims before it. With respect to the immunity claim, I think this court's decision in Cisneros 10 years after Midland Asphalt did allude to a type of separation of powers claim that would involve in presidential immunity. I think Judge Henderson pointed out the Supreme Court itself has acknowledged that this idea of an explicit guarantee is more of a suggestion than some sort of statutory prescription. But there's been no cases since then that have actually used that word suggestion to follow up on that line of thinking. Within the Supreme Court, I don't believe there have been cases, but certainly this court in Cisneros as well as in cases also post Midland Asphalt like Rose, Rostenkowski, and Durenberger have recognized that this type of a separation of powers claim when you're talking about immunity is something for which a collateral order, appellate jurisdiction on a collateral order theory is available. There are also other circuits, I think it's First, Second, and Tenth that keep following that line of thinking with respect to Midland Asphalt requires an explicit constitutional or statutory language that says you cannot be tried. So two responses. One, I think in cases like Cisneros, this court has spoken otherwise. But nonetheless, I think the only one there is the First Circuit's decision in Joseph where it was the case of a judge seeking a criminal, raising an immunity defense to a criminal prosecution. As this court acknowledged in both, I believe, Rostenkowski and Durenberger, that's in some tension where they didn't acknowledge that. The case, the court there talked about Claiborne and Hastings, which are Ninth Circuit and Eleventh Circuit cases. I think Judge Easterbrook, in his shock opinion, noted that when it deals with a personal immunity like that, it's different than the kind of transactional immunities that were considered in the Tenth and the Second Circuit cases. At the end of the day, I think we do, sort of a small point of common ground between us and the defendant, we do think that with respect to jurisdiction, there is a little bit of a different inquiry with respect to a president. We don't think that carries over to the merits in the least. And I think United States versus Nixon is sort of the perfect example of that. There, the court said it would be unseemly to hold the president, to require the president to go into contempt. Nonetheless, reaching the merits, of course, rejected President Nixon's absolute executive privilege claim and required that there... You don't see a distinction on the civil versus criminal context of the cases I'm referring to are criminal cases. So I don't, and Rose said as much here when talking about civil and criminal with respect to speech or debate. And again, I mean, I know this Nixon versus Fitzgerald is a civil case, and we strongly disagree that it should be applied here for many of the reasons that Judge Pan set out. But I do think with respect to the immunity, again, given the language in Rose, that would supply basis for this court to entertain the immunity claim. But why aren't you taking the position that we should dismiss this appeal because it's interlocutory? Doesn't that advance your interests? Our interests are twofold. One, as in United States versus Nixon, it is doing justice. And then the second is indeed to move promptly to satisfy and vindicate the public's and the defendant's interest in a prompt resolution of this trial. But doing justice means getting the law right. And it's our view that even if a dismissal on jurisdiction might move this case faster, actually, empirically, that's hard to know. We just don't think that's the right analysis here on either immunity or the second claim. So we have a line of cases, including Cramer versus Gates and American Hospital Association versus Azar. It says that we can assume hypothetical statutory jurisdiction and reach the merits of a case. Statutory jurisdiction being distinct from Article III jurisdiction, which we could never assume because that implicates the power of the court to act. So if we had discretion to reach the merits versus just dismissing this case under Midland Asphalt, which I think is a strong precedent, which suggests that this appeal is interlocutory and does not fall under the collateral order doctrine. How should we determine how to exercise that jurisdiction about whether or not we should reach the merits? So I think in the American Hospital's decision, the 2020 decision, the court said the formulation was something like, we're doubtful as to our jurisdiction. But nonetheless, invoking the line of cases you've just described went on to decide the merits. We would urge the courts to do the same here, even if it entertains doubts with respect to the jurisdiction. Yes, hypothetical statutory jurisdiction is available under the law of the circuit. The court should use that to reach the merits. But doesn't that lead to a hypothetical decision and an advisory opinion? No, I think that... So we disagree... The Supreme Court has said that. No, I don't think the Supreme Court has said that. I mean, the Steele Co. is kind of the leading Supreme Court decision. And then some courts, including this court, has devised a hypothetical statutory jurisdiction doctrine. Now, if this court were to dismiss for lack of jurisdiction and then say, nonetheless, as an alternative holding, here's how we would come out on the merits, that I think would be improper. And that is what I understand the American Oversight brief to be suggesting at footnote 11 on page 20 of its brief. That I don't think is something the court could do. I understand the hypothetical statutory jurisdiction piece to allow the court to say, you know what, this is hard. There might be arguments on both sides. We think that there is... We assume hypothetical statutory jurisdictions. We move forward. We decide the merits. Now- Let me ask you about Marbury v. Smith. What's your interpretation of its progeny? Or even the case itself? So our interpretation is much closer in line with what I think I heard Judge Pan setting out and similar to yours. It certainly does not erect a unreviewable power for the presidency. I think the sort of the prime example of that is the Steele-Scheeser case, the Youngstown case. That was President Truman closing the steel mills. That was the court coming in and reviewing that. We see that all the way through to the present. And so it's harsh to see any world in which the court just says, you know, we can't intervene here. I accept the court's, Judge Henderson, the distinction between sort of ministerial and discretionary acts. Compliance with the law is not some sort of discretionary call, right? It is something that I fully endorse or agree with the idea of the paradox of a president on the one hand, having the article to take care responsibility. On the other hand, sort of seeing the laws as compliance with the law is optional. Let me switch. How do we write an opinion that would stop the floodgates? Your predecessors in their OLC opinions recognize that criminal liability would be unavoidably political. So a couple of responses. For one, of course, that was with respect to a sitting president. I think the analysis is extraordinarily different with respect to a former president, which which OLC in that very same. I'm sorry, but with respect to being necessarily political. Well, I think there is a political process, which is impeachment. And we can talk about that. But there is a legal process which is decidedly not political. And that is a process which has the kinds of safeguards that a couple of members of the court here have already referred to. We're talking about prosecutors who follow strict codes and who are presumed to act with regularity. Grand jurors had its jury eventually. And this court sort of standing article three court standing above it. But I also want to push back a little bit against this idea of a floodgate, at least since the Watergate era 50 years ago. Has there been widespread societal recognition, including by presidents and the executive branch, that a former president is subject to criminal prosecution? And Nixon was not about private conduct. Nixon was about, among other things, using the CIA to try to interfere with an FBI investigation. He then accepts a pardon, understanding that after having resigned. So, again, I think that also undermines this impeachment first argument. After Nixon, we then see a series of independent and special prosecutors investigating a range of different types of conduct. You saw independent counsel Lawrence Walsh in the Iran-Contra affair. That's an example that the defendant invokes in his reply brief. In chapter 27 of that report, the independent counsel assumes that President Reagan is subject to prosecution and says, but we don't, we didn't get there evidentiarily. They were not, we thought there was some sort of immunity. And that has continued through to the present. And so this notion that we're all of a sudden going to see a floodgate, I think the, you know, again, the careful investigations in the Clinton era didn't result in any charges. The fact that this investigation did doesn't reflect that we are going to see a sea change of vindictive kit for prosecutions in the future. I think it reflects the fundamentally unprecedented nature of the criminal charges here. Never before has there been allegations that a sitting president has with private individuals and using the levers of power such to fundamentally subvert the democratic republic and the electoral system. And frankly, if that kind of fact pattern arises again, I think it would be awfully scary if there weren't some sort of mechanism by which to reach that criminally. In your brief, you raised some sort of lesser immunity potentially applying. Want to speak to that? I do. We don't think that comes into play here. The point was in some sort of more challenging cases, it might be that where a president is operating under extraordinary time pressure has to make a very difficult kind of national security type of decision. You know, do I go in and commit this kind of we ordered the drone strike under these circumstances? You know, a president will often have a cadre of lawyers to advise him or her. Lawyers say, Madam President, we'll get to a memo in two months. That's not going to be enough in that situation. If there were a drone strike, civilians were killed. That theoretically could be subject to some sort of prosecution as murder. I think that might be the kind of place in which the court would properly recognize some kind of immunity. But that is, of course, nothing like what we've got here. I sort of take the former official's brief discussing the vesting clause to talk about the kind of the nature of charges when they focus on, again, subverting the electoral process. At a minimum, there's going to be there should be no type of immunity that covers that. So are you saying it should be a case-by-case balancing in each case, whether there's immunity? Or how does this work as a legal standard? So we think that it should just be, as the district court held, finding there is a balancing under Fitzgerald, right? That's our view. You start with this question, what are the burdens against the presidency? And what are the interests to be furthered? The answer to that question under Fitzgerald, we think that the burdens that my friend talks about on the other side are overstated. I'm happy to describe why. We think the public's interest in an ongoing criminal prosecution means that there should be an across-the-board rule that a former president is indeed subject to criminal prosecution. What I'm describing in response to Judge Child's question is, in a particular case, might there be some extraordinary circumstance where a president, a former president could invoke an immunity? Maybe. I don't think the court has to reach that there. I think the court can write an opinion that reserves and says, based on the nature of the allegations, which we take as true, there is no reason to recognize that here. And so I don't think it needs to be a case-by-case analysis. But I think the court can reserve that type of question to the extent it gives one pause about a president in a future situation. To that end, can you answer the question I posed earlier to your opposing counsel about, are we to look at the broader question that was dealt with by Judge Chuck and with respect to presidential immunity, absolute immunity for no criminal prosecution of official acts, versus looking at this indictment and accepting as true the allegations that it brought there, or both? So we have a strong preference that the court adopts the former view and looks at the question as the district court did, which is to say, based on questions of separation of powers, constitutional text, history precedent, is there, in fact, immunity for a former president? We think the answer to that is no, for, of course, all the reasons we put in the brief, and I'm happy to sort of address here. Candidly, I think if the court gets to that second question, there are some hard questions about the nature of official acts. And frankly, as I think Judge Pan's hypothetical described, I mean, what kind of world are we a president orders his SEAL team to assassinate a political rival and resigns, for example, before an impeachment? Not a criminal act. President sells a pardon, resigns, or is not impeached? Not a crime. I think that is extraordinarily frightening future, and that is the kind, if we're talking about a balancing and a weighing of the interest, I think that should weigh extraordinarily heavily in the court's consideration. Let me ask you about the effect of blasting game. How does it either bind us? How is it persuasive for us? So I think it formally has no application at all, because, of course, very early on in the opinion, the court says we're not dealing with any questions of immunity in the criminal context. I tend to agree with my friend on the other side that in many respects, it does reinforce the nature of the Fitzgerald civil outer perimeter standard. It says you don't look at intent or you don't look at purpose. Context plays a more important role than often the content of communications. I think the significant change, of course, is the acknowledgement of looking at a president, whether that president is acting in his or her role as office seeker or office holder. But, again, to go back to my response to Judge Child's question, although that would change the nature of whether certain, may change the nature of whether certain things are or are not official acts in the indictment, we just think that's entirely the wrong paradigm to use. We think under Fitzgerald, in fact, that would be inconsistent with Fitzgerald's reasoning and also just irreconcilable with the nature of how criminal law works. To say that we're not going to take account of motive or intent, there are plenty of acts every day. For example, if I were to encourage someone not to testify at trial because I wanted to go on a hike with that person. It's not a trial. If I were to encourage someone not to go on a hike because their testimony, sorry, encourage them to skip their trial testimony because their testimony was going to incriminate me, it's the same underlying act. And now when you map that on to the presidential context, you come up with some of the frightening hypotheticals where as long as something is plausibly official, even if it involves assassinating a prominent critic or a business rival, that would seem to then be exempt potentially from criminal prosecution. We certainly wouldn't concede that if that's the world we need to live in. I think we would advance plenty of arguments below, but those arguments themselves would create satellite litigation that are an additional reason not to go down this route. But looking and thinking about your answer about potentially not looking at motive and intent, when there is a criminal prosecution, that mens re and that intent is part of the actual statute charged criminally. Yes, precisely. And that's why it wouldn't make sense to then come in and use this non-motive intent. As I understand how Fitzgerald Outer Perimeter Standard might work, it could say those types of official acts, official conduct, that is something from which the president is immune. You don't ever get to that second question of, well, did that person act then with mens re? Can we prove it beyond a reasonable doubt? Because it is, at least under a theory where it's not available at trial, then there's no way to reach that conduct. When we're looking at this indictment, though, back to Judge Henderson's question about the use of blasting game, some of the acts are same or similar. And there was direct discussion of it in that opinion as determining whether it was office seeker versus office holder. So do we use blasting game, at least for that? So if this court decides the case the way the district court did, then I don't think blasting game has any role to play at all. Because there is no question of whether was this act official or were these sets of allegations official? The question is, based on a Fitzgerald analysis and history precedent, et cetera, is there any quantum of immunity for a former president? We think the answer to that question is no. There's no reason, as the district court also found, to turn to the indictment and consider this outer perimeter, this civil outer perimeter standard. How about if you don't decide it the way the district court did? If you don't, I mean, I suppose a lot would— Beyond the blasting game. So there are a lot of different ways this court could not decide it that way. I think, to pick up on my response to Judge Childs, we certainly stand by our view in the brief that some substantial number of allegations would fall outside of an outer perimeter. And that, I think, is enough to affirm. I think either parties are urging the court at that point to then send, of course, the case back to the district court. I think that then would create a series of challenging questions that I mentioned earlier. What are the evidentiary theories under which that evidence could potentially come in? And—but it would be our strong view, and we would want, if the court followed that route, which we urge the court not to, to make clear that immunity is an on-off switch, right? This is the immunity appeal. If the court says, we affirm, we send it back, there's no immunity, then other things become evidentiary questions or questions, really, of jury instructions in which any appeal is then an appeal from a final judgment, if any final judgment. And the immunity defense is never lost. Well, I don't think it's immunity at that point. I think this court will, in what I've just described, will have said there is no immunity. There may be some types of other challenges as evidence comes in at trial. But again, I think that would lead to this extraordinarily complicated litigation that is not the top-line reason, but certainly among the reasons why the court should not go down that path. Since President Trump concedes that a president can be criminally prosecuted under some circumstances, he says that that is true only if he is first impeached and convicted by Congress. Do you agree that this appeal largely boils down to whether he's correct in his interpretation of the impeachment judgment clause? That is, if he's correct that the impeachment judgment clause includes this impeachment first rule, then he wins. And if he's wrong, if we think the impeachment judgment clause does not contain an impeachment first rule, then he loses. So I think that's basically right. I mean, the defendant's theory over the course of this litigation has evolved a bit. And I think now, before this court, I understand the argument should be principally sort of a principle submission to be, as you just described, what we call in our brief the conditioned precedent argument, that there is only liability, criminal liability, for a former president if that president has been impeached and convicted. And that is wrong for textual, structural, historical reasons, and a host of practical ones, one of which I'll start with, again, just to amplify the point. It would mean that if a former president engages in assassination, selling pardons, these kinds of things, and then isn't impeached and convicted, there is no accountability for that individual. And that is frightening. Now, to go back to some of the textual and historical and structural, my friend on the other side sort of suggests this is what the founders were talking about, and this is what they were worried about. I think it's entirely an inaccurate representation of the founding era history. There's basically no discussion of the impeachment judgment clause, which I take the defendant's principled textual arguments to be. What the impeachment judgment clause did was two things, as the district court described. It constrained the sanctions that Congress could place on an impeached and convicted officer, not only a president, any kind of officer, to removal or disqualification. And then it made clear that that impeachment did not impose some sort of preclusive bar on subsequent criminal prosecution. You would think that if there was this kind of impeachment first requirement, impeachment and conviction first, you might actually find something somewhere in the sources, the framing, the convention in Philadelphia, the ratification discussions, early history. There was nothing of that. We cited certain things in our brief from James Wilson, from Edmund Hamilton, from Representative Dana that say this, just a story. I don't hear the defendant to offer anything other than, well, Hamilton. All that Hamilton was describing was the undisputed point here that a sitting president can't be subject to criminal prosecution until that sitting president is no longer in office, whether the removal from office is through impeachment and conviction or simply the end of the term. Now, a structural point as well that I just want to quickly make, the district court made this, which is if this rule were right, if the precedent rule were correct, it would pose significant separation of powers problem of its own. It would basically mean that the executive branch would only be able to prosecute someone if Congress had acted. And there are all sorts of reasons why, of course, Congress won't act. For one, they've never believed that it was required. And also, in certain instances, they decide that they don't have jurisdiction. Many of the members of Congress seem to hold that view with respect to the defendant's second impeachment. Thank you very much. Yeah, go ahead. Thank you, Your Honor. In my limited time remaining, I just want to make three points to the court in response to the opposing counsel's argument there. One is that the opposing counsel used the phrase above the law, saying that an immunity doctrine for criminal immunity would place the president above the law. I would just direct the court's attention to what the Supreme Court said at Nixon against Fitzgerald in the context of civil immunity. They described the allegation that immunity sets the official above the law as, quote, rhetorically chilling, but wholly unjustified. The U.S. Constitution, the separation of powers, the executive vesting clause, the impeachment judgment clause, these are the foundational and fundamental law of our country, and the president's immunity is determined on that. So that is more rhetoric than reality, is what the Supreme Court said at Nixon against Fitzgerald. I'd also point out that when it comes to the question of whether or not the indictment alleges solely official acts, the indictment does not allege that President Trump did anything wrong after he left office. So it focuses solely on acts that he took while he was in office, and that's a telling indication that we're dealing with official acts here. And then finally, I would address Judge Henderson's question about the floodgates, and I'd tie that to what my opposing counsel said about a so-called frightening future. The frightening future that he alleges where presidents are very, very seldom, if ever, impeached and convicted first is the one we've lived under for the last 235 years. That's not a frightening future. That's our republic. What he is forecasting is a situation where the floodgates will be open. We are in a situation where we have the prosecution of the chief political opponent who is winning in every poll, a presidential election upcoming next year, and is being prosecuted by the administration that he's seeking to replace. That is the frightening future that is tailor-made to launch cycles of recrimination that will shake our republic for the future. If you have the impeachment judgment clause, as you indicate, indicate impeachment, then conviction, but then the president either resigns, is removed, and then later on is prosecuted for a different crime. Can that happen, or is there immunity there? Not sure I understand the hypothetical. Could you say it again? I apologize. Just indicating that if you're resting on that there must be impeachment and conviction, and it's for one set of crimes, but then later on the president either is removed from office or resigns, and later on there's a prosecution for something different. Is there immunity for that later crime? Yes. That's the better reason. This is not presented in this case because we have a close match between the conduct, the underlying conduct, or transaction occurrence that's alleged in the articles of impeachment of which there was an acquittal, an acquittal, right, which is the strongest case for double indictment, but if there were like an unrelated prosecution- I have a question because you just made a statement about he's only being prosecuted for crimes while in office, and so that's why I'm asking about leaving office and then thereafter being prosecuted for something different. It doesn't have to be. Under the plain text of the Constitution, the best reading would be he has to be impeached and convicted for the thing that he subsequently prosecuted. So if he were impeached, convicted, and removed from office, and they charged him with another official act that was unrelated to impeachment, I think that what Chief Justice Marshall says in Marbury would still govern. I think that's obviously not presented in this case. The court doesn't have to decide it, but that'd be my answer. So I just want to confirm, your position is if President Trump had been convicted after his impeachment trial on incitement of insurrection, he'd been convicted, then this prosecution would be entirely proper. Which I would say that if he were impeached and convicted for the same and similar conduct, then that would authorize a subsequent prosecution. Obviously, we have many other issues with this prosecution. Is that a yes? Because I think you said in your brief that that impeachment for incitement of insurrection is based on the same or related conduct as that which is in the indictment. Yes, yeah, I agree with that. So if he had been convicted by the Senate, then this prosecution would be entirely proper, correct? But not phrased it that way, because there's lots of other problems with this prosecution that we've raised in extensive police and district court. Under the impeachment judgment clause, if he had been convicted by the Senate when he was impeached for incitement of insurrection on same or related conduct as what's in the indictment, then this prosecution would be properly brought. This a prosecution could be properly brought. This prosecution, which has tons of other problems. I just want to be very clear about that. I'm making any confession that this prosecution is- All right, let me try one more time. Under your interpretation of the impeachment judgment clause, if President Trump had been convicted when he was previously impeached on same or related conduct as that which is in this indictment, the government could properly prosecute him for that same or related conduct. Yes or no? Potentially provide a base qualified with all kinds of other legal doctrines that are violated in this case. Under your interpretation of the impeachment judgment clause, is that proper? Is that allowed? I stand on my prior answer. I think we're agreeing. I understand there might be other reasons why you would challenge this prosecution. I'm saying based on your interpretation of the clause, this prosecution would be properly brought. If a ... I would not say this prosecution would be very clear about that. But it's a prosecution based on same or related conduct. This prosecution, which has many other issues related to it, what I'm going to say is that the impeachment judgment clause authorizes the prosecution of a president who's been impeached and convicted by the Senate, which President Trump- All right, make it a hypothetical. Say a president was impeached and convicted on a charge of incitement of insurrection that is under the same allegations as a criminal indictment. He's convicted. Then the government could bring a prosecution for the same or related conduct, correct? I just agree with that. Okay. And then that means that the conduct, that same or related, even if it's official, he could be prosecuted for it, correct? He should be convicted. Correct. Okay, thank you. But my question goes to, after the fact, and the reason I state that, even though you're challenging that these actions are only occurring while president, the district court decision was that there is no presidential immunity from prosecution for official acts. It doesn't put a timeframe in there. And so that's why I'm going to, beyond your investigation, your prosecution might not come until later, after the president has left office. So are you telling us that we are limited to a timeframe in answering this question? I think the timeframe is set forth by chief justice and personal evidence. We already get status and he says never examinable by the courts. So unless there is that one gatekeeping incident that has to occur, which is impeachment and conviction, the official acts, the court has no jurisdiction to review them under the separation of powers and the executive vesting courts. But that also assumes that an impeachment proceeding occurred if there is not one, because we discussed earlier that not all officials go through that process. Absolutely. That's a judgment call as to whether that process would even be brought. I would say we have two arguments that reinforce each other. So if there's no impeachment ever and no conviction, then the official acts are immune period. Further, the impeachment judgment clause incorporates a doctrine of, you know, a doctrine of devil jeopardy that prohibits it, especially in the case of acquittal. So those are reinforcing doctrines that are set forth in the constitution. If there are no further questions, we'd ask the court to reverse. All right. Thank you.
judges: Henderson, Childs, Pan